1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**CENTRAL DISTRICT OF CALIFORNIA**

10

**WESTERN DIVISION**

11
12

JORGE L. D.,

Case No. 2:22-cv-09322-BFM

13

Plaintiff,

**MEMORANDUM OPINION AND ORDER**

14

v.

15

KILOLO KIJAKAZI, Acting
Commissioner of Social Security,

16
17

Defendant.

18
19

## I.     PROCEDURAL HISTORY

20

Plaintiff Jorge L. D.[1] applied for Supplemental Security Income payments

21

alleging a disability that commenced on January 1, 2013.[2] (Administrative

22

Record ("AR") 15, 265-71.) Plaintiff's application was denied at the initial level

23
24

---

[1]   In the interest of privacy, this Memorandum Opinion and Order uses only the first name and middle and last initials of the non-governmental party in this case.

25
26

[2]   Plaintiff's previous application for Supplemental Security Income payments was denied in a March 31, 2020, decision by a different Administrative Law Judge who found Plaintiff not disabled from May 31, 2018, the date the application was filed, through March 31, 2020. (AR 15, 44-66.)

27
28

of review and on reconsideration, after which he requested a hearing in front of an Administrative Law Judge. (AR 124-26.) The ALJ held a hearing at which Plaintiff amended his alleged onset date to June 16, 2020, the date the application was filed. (AR 15.) The ALJ heard testimony from Plaintiff and a vocational expert (AR 31-50), after which the ALJ issued an unfavorable decision. (AR 15-26.) The ALJ found at step two of the disability analysis[3] that Plaintiff has the severe impairment of schizophrenia. (AR 18.) At step three, the ALJ concluded that Plaintiff's condition does not meet or medically equal the severity of any impairment contained in the regulation's Listing of Impairments—impairments that the agency has deemed so severe as to preclude all substantial gainful activity and require a grant of disability benefits. (AR 19); *see* 20 C.F.R. pt. 404, subpt. P, app. 1.

The ALJ then assessed Plaintiff's residual functional capacity—the most that Plaintiff can do despite his limitations. He determined that Plaintiff has the residual functional capacity to perform a full range of work at all exertional levels but with a number of limitations. Those limitations included, among other things, an ability to work at a consistent pace throughout the workday only at simple tasks, and not at a production rate pace with strict deadlines or high quotas; an inability to interact with the general public; and no more than occasional interaction with co-workers and supervisors. (AR 20.) The ALJ credited the vocational expert's testimony that an individual with Plaintiff's limitations, and of his age and education level, would be able to perform jobs in the national economy. (AR 25.) He thus found Plaintiff to be not disabled since June 16, 2020, the date his application was filed, and denied his claim. (AR 26.)

---

[3] A five-step evaluation process governs whether a plaintiff is disabled. 20 C.F.R. §§ 404.1520(a)-(g)(1), 416.920(a)-(g)(1). The ALJ, properly, conducted the full five-step analysis, but only the steps relevant to the issue raised in the Complaint are discussed here.

1   The Appeals Council denied review of the ALJ's decision. (AR 1-5.)

2          Dissatisfied with the Agency's resolution of his claim, Plaintiff filed a

3   Complaint in this Court. He argues that the ALJ erred when he failed to do the

4   following: (1) properly evaluate the medical opinions of record, specifically the

5   opinion of the consultative psychological examiner Amber Ruddock, Ph.D.; and

6   (2) include work-related limitations in the residual functional capacity

7   consistent with Plaintiff's testimony regarding the nature and intensity of his

8   limitations. (Pl.'s Br. at 1.) Defendant requests that the ALJ's decision be

9   affirmed.

10

11                        **II.    STANDARD OF REVIEW**

12          Under 42 U.S.C. § 405(g), the Court reviews the Commissioner's decision

13   to deny benefits to determine if: (1) the Commissioner's findings are supported

14   by substantial evidence; and (2) the Commissioner used correct legal standards.

15   *See Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1159 (9th Cir. 2008);

16   *Brewes v. Comm'r Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012).

17   "Substantial evidence . . . is 'more than a mere scintilla.' It means—and only

18   means—'such relevant evidence as a reasonable mind might accept as adequate

19   to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)

20   (citations omitted); *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522-23 (9th

21   Cir. 2014) (internal quotation marks and citation omitted). To determine

22   whether substantial evidence supports a finding, the reviewing court "must

23   review the administrative record as a whole, weighing both the evidence that

24   supports and the evidence that detracts from the Commissioner's conclusion."

25   *Reddick v. Chater*, 157 F.3d 715, 710 (9th Cir. 1998).

26

27

28

                                        3

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### III.   DISCUSSION

Although Plaintiff raised two issues, this Order addresses only one: the ALJ's failure to properly consider the opinion of the consultative examiner Dr. Ruddock. As to that issue, Plaintiff argues that the ALJ did not properly consider the supportability and consistency of Dr. Ruddock's report.

For the reasons set forth below, the Court determines that the ALJ's decision must be reversed on this basis, and thus declines to address Plaintiff's contention that the ALJ failed to properly consider Plaintiff's subjective symptom testimony.

### A.   Medical Opinions

#### 1.   Legal Framework

Under governing regulations, an ALJ is required to articulate how persuasive he finds the medical opinions and the prior administrative medical findings in a claimant's record. 20 C.F.R. § 416.920c(b). In doing so, the ALJ must consider both the "supportability" and the "consistency" of each opinion. 20 C.F.R. § 416.920c(b)(2). Supportability is the extent to which a medical source, here, psychological consultative examiner Dr. Ruddock, "supports [her] medical opinion by explaining the 'relevant . . . objective medical evidence.'" *Woods v. Kijakazi*, 32 F.4th 785, 791-92 (9th Cir. 2022) (quoting 20 C.F.R. § 416.920c(c)(1). Consistency asks whether the medical expert's opinion or finding is consistent with "the evidence from other medical sources and nonmedical sources in the claim." 20 C.F.R. § 416.920c(c)(2). The ALJ is required to consider other factors that relate to medical opinions (such as relationship with the claimant and length of the treatment relationship, among others) but the failure to explain how he considered those other factors is not necessarily error. *See* 20 C.F.R. § 416.920c(b)(2).

4

1    An ALJ cannot reject a medical provider's opinion as unsupported or

2 inconsistent without providing an explanation supported by substantial

3 evidence. *Woods*, 32 F.4th at 792. Here, the ALJ's treatment of Dr. Ruddock's

4 opinion fails to satisfy that test.

5        **2.    Plaintiff's Functional Abilities**

6    On September 23, 2020, Dr. Ruddock evaluated Plaintiff in-person and

7 chronicled her observations in a written report. (AR 396-400.) She was given no

8 records to review. (AR 396.) She noted that Plaintiff reported a history of

9 psychiatric hospitalizations "in the past beginning in 2013"; experienced suicidal

10 and homicidal ideation in the past but not since 2014; and reported he currently

11 experiences auditory and visual hallucinations, as well as paranoia, constantly

12 thinking that people are following him and watching his every move. (AR 396.)

13 Plaintiff also reported to Dr. Ruddock that it was difficult for him to make friends

14 or interact with others. He stated that his symptoms have "gotten considerably

15 better with his psychiatric medication," but "have started to emerge again." (AR

16 397.)

17    Dr. Ruddock noted Plaintiff was cooperative but "somewhat difficult to

18 interact with as he would have periods of remaining entirely silent and not

19 responding to questions asked." (AR 397.) She also found him to be "socially

20 reserved" with her during the examination. (AR 398-99.) She described his

21 thoughts as "poorly organized," and noted he "engaged in odd behaviors where

22 he would have brief moments where he appeared to be in an almost catatonic-

23 like state," and would not engage in any form of verbal communications without

24 additional prompting. (AR 398.) His "fund of knowledge was below average," and

25 he was unable to describe simple proverbs. (AR 398.) His insight and judgment

26 were also below average. (AR 398.)

27    On the more positive side, Dr. Ruddock also noted that Plaintiff was

28

cooperative; his effort was adequate; his response time and work pace were within normal limits; he was oriented to person, time, place, and purpose; his mood was euthymic and his affect was congruent with his mood; his memory was intact for immediate, intermediate, and remote memories; he could recall 3 out of 3 words at immediate and intermediate timeframes; and his attention and concentration span were "appropriate." (AR 397-98.)

As relevant to Plaintiff's mental impairment, at step four of the analysis, an ALJ must consider whether a claimant's impairments meet or exceed the criteria for the "Listing" for that impairment. For mental impairments, the Listing describes four areas of functional abilities on which claimants are evaluated: the ability to understand, remember, or apply information; the ability to interact with others; the ability to concentrate, persist, or maintain pace; and the ability to adapt or manage oneself. 20 C.F.R. pt. 404, subpt. P, app. 1. Applicants are scored on each area from no limitation, to mild, moderate, marked, or extreme limitation. For Plaintiff's impairment to meet the Listing with respect to his mental condition, his limitations would have to result in one area of "extreme" limitation or two areas of "marked" limitation. *Id.*

Dr. Ruddock opined Plaintiff would have marked difficulty in understanding, remembering, and carrying out detailed and complex instructions; in complying with job rules such as safety and attendance; and in maintaining persistence and pace in a normal workplace setting. (AR 398.) She also opined that Plaintiff would have moderate difficulty understanding, remembering, and carrying out short, simplistic instructions; in making simplistic work-related decisions without special supervision; and in responding to change in a normal workplace setting. (AR 398.) She also believed he would have moderate difficulty interacting appropriately with supervisors, coworkers, and peers on a consistent basis. (AR 399.)

### 3.    ALJ's Decision

The ALJ found Dr. Ruddock's opinions to be "minimally persuasive." (AR 23.) He asserted that her conclusions were not supported by her examination, which supported finding some limitations but "does not support finding [Plaintiff] has a moderate limitation in his ability to perform simple tasks or marked limitations in other areas." (AR 23.) He also discounted her opinion as "based on a one-time examination" that was based "at least partially on [Plaintiff's] self-reported limitations rather than her own observations, and . . . inconsistent with the treatment notes as a whole." Those treatment records reflect that Plaintiff "denied having hallucinations, suicidal ideation, symptoms of psychosis, and side effects from his medications," and also reported on "several occasions" he was "doing well and is stable." (AR 23 (citing generally AR 356-95, 401-52, 453-76).) The ALJ concluded that the treatment record as a whole is more consistent with his residual functional capacity determination that Plaintiff is "capable of performing simple tasks in a setting without high quota demands and with occasional interaction with coworkers and supervisors, but without interaction with the general public or teamwork." (AR 23.)

Considering all evidence in the record, the ALJ concluded that Plaintiff's limitation in each functional area was moderate, not marked or extreme. (AR 19.)

### 4.    Analysis

Plaintiff argues that the ALJ's reasons for discounting Dr. Ruddock's opinion are insufficient because they are "inconsistent with the very nature of Plaintiff's mental impairments and the evidence of record." (Pl.'s Br. at 6.) The Court agrees.

Here, the ALJ noted that Dr. Ruddock's opinions were unsupported because they were (1) "at least partially based" on Plaintiff's self-reported

limitations, and (2) inconsistent with the treatment notes as a whole. These reasons for finding Dr. Ruddock's opinions to be "minimally persuasive" are not supported by substantial evidence.

The first reason—that Dr. Ruddock relied in part on Plaintiff's own description of his conditions—does not withstand scrutiny. As an initial matter, courts have acknowledged a claimant's own description of his symptoms plays a necessary role in the diagnosis and treatment of mental health issues. *See, e.g.*, *Sanchez v. Apfel*, 85 F. Supp. 2d 986, 992 (C.D. Cal. 2000) (noting that psychiatric impairment is not "readily amenable to substantiation by objective laboratory testing"). And as the ALJ notes, Dr. Ruddock's opinion was only *partially* premised on Plaintiff's description of his symptoms. The consultive examiner here spent time with Plaintiff, conducted her own testing, and made her own observations. Part of a psychological examiner's role—and her expertise—is testing a patient's claimed symptoms against the more objective signs of mental illness to see whether they align. As such, the fact that Dr. Ruddock may have partially relied on Plaintiff's own report of paranoia and hallucinations is not a basis to reject her opinion.

But even without taking Plaintiff's self-reported symptoms into account, Dr. Ruddock's own observations and testing reflect Plaintiff's difficult attitude, periods of silence and failure to respond to questions, poorly organized thoughts, below average fund of knowledge, and below average insight and judgment. Thus, Dr. Ruddock's observations alone lend support to her opinions that Plaintiff would have *some* degree of difficulty in several areas: understanding, remembering, and carrying out short, simple instructions, maintaining persistence and pace, handling detailed and complex tasks, interacting with others on a consistent basis, responding to change, making simple work-related decisions, maintaining attendance, and complying with job rules. The ALJ erred

1   in discounting the persuasiveness of Dr. Ruddock's opinion because she partially

2   relied on Plaintiff's self-reporting of symptoms.

3        To the extent that the ALJ takes issue with the *degree* of the limitations

4   found by Dr. Ruddock, the ALJ appears to have relied primarily on his finding

5   that Dr. Ruddock's opinions were inconsistent with the treatment records as a

6   whole. In particular, the ALJ pointed to records of Plaintiff's monthly office

7   visits with his doctors. The ALJ notes that, in that setting, Plaintiff repeatedly

8   "denied having hallucinations, suicidal ideation, symptoms of psychosis, and

9   side effects from his medications," and also reported "on several occasions that

10  he is doing well and is stable." (AR 23 (citations omitted).) Plaintiff does not

11  dispute that there are such findings in his treatment records, but asserts that

12  the treatment records generally—including some of the same records containing

13  these "benign" findings—also include findings of "abnormal mood or affect,

14  impoverished thought processes, or poor insight." (Pl.'s Br. at 8 (collecting

15  cites).) He argues that it was error for the ALJ to pick out a few isolated

16  instances of improvement and treat them as a basis for concluding Plaintiff is

17  capable of working. (Pl.'s Br. at 8-9 (citing *Garrison v. Colvin*, 759 F.3d 995,

18  1017 (9th Cir. 2014).)

19       Plaintiff is right that there are a fair number of records that align with

20  the symptoms reported by Dr. Ruddock: Plaintiff had angry

21  outbursts/irritability (AR 362, 374 (no episodes reported this visit), 439, 443);

22  impoverished thought process (AR 362, 374, 383, 417, 432, 443, 461, 466); no

23  interests (AR 374); poor insight (sometimes noted with respect to his chronic

24  marijuana use) (AR 362, 374, 383); blunted mood and/or flat affect (AR 431, 442,

25  449, 459, 464); occasions of hearing voices (AR 467); paranoia (AR 467); and

26  anxiety (AR 467).

27       An ALJ is permitted—indeed required—to address discrepant medical

28

9

1    records and decide which ones to credit. And yet the ALJ himself cited these
2    records and characterized them as saying that Plaintiff "regularly reported or
3    was observed to display behavior and temperament consistent with [a diagnosis
4    of schizophrenia], including auditory and visual hallucinations, paranoia,
5    nervousness, anxiousness, difficulty focusing and concentrating, and self-
6    isolation." (AR 22.)

7         Thus, while it is true that Plaintiff did not report hallucinations at every
8    treatment visit and that he sometimes reported being in a stable mood, the ALJ
9    himself found that the record was significant for schizophrenia and found that
10   Plaintiff had regularly both reported and been observed displaying symptoms
11   consistent with schizophrenia. Given that finding, the ALJ's explanation for
12   discounting Dr. Ruddock's opinion based on its inconsistency with the treatment
13   records does not have the support of substantial evidence.

14        The ALJ noted that Dr. Ruddock's opinion was based on a one-time
15   encounter with Plaintiff. (AR 23.) An ALJ is permitted, and indeed required, to
16   consider the length and nature of the relationship between the claimant and the
17   medical professional who offers an opinion. 20 C.F.R. § 416.920c(c)(3). But if the
18   other bases for rejecting Dr. Ruddock's opinions are insufficient, then the one-
19   time nature of the consultative examination is an insufficient basis, standing
20   alone, to reject her opinion. Consultative examiners are experts hired by the
21   Agency itself, with instructions to offer an opinion in cases where the record is
22   insufficiently developed. *See* 20 C.F.R. § 416.919a(b). The regulation authorizes
23   "*a* physical or mental examination or test," and thus envisions a one-time-only
24   relationship. If a consultative examiner's report could be rejected solely because
25   it was premised on a one-time examination, then an ALJ could always disregard
26   a consultative expert's report if he did not like its conclusions. Such a result
27   would be inconsistent with the role that consultative examiners play in the

28

overall regulatory scheme. It is also inconsistent with 20 C.F.R. § 416.920c(b)(2), which says that all medical opinions, including those offered by consultative examiners, should be judged chiefly by their supportability and consistency. Because the ALJ's other reasons for disregarding Dr. Ruddock's opinions fail, the one-time nature of their relationship, standing alone, does not provide substantial evidence to support the ALJ's conclusion.

In defending the ALJ's decision, Defendant notes that unlike the State agency reviewers, Dr. Ruddock had no records to review and therefore "was unaware of the contradiction between Plaintiff's unremarkable treatment records and his presentation at the consultative examination." (Def't's Br. at 3-4.) But this was not a reason that the ALJ gave for discounting Dr. Ruddock's decision[4] and therefore the Court cannot affirm on that basis. Nor, as set out above, does the Court agree that the treatment records are unremarkable. In any event, Dr. Ruddock's opinion either is consistent with the medical record or it is not, but whether Dr. Ruddock would have opined differently if she had been asked to conduct a different evaluation and was provided different information is not before this Court.

On this record, the Court cannot find that the ALJ's determination to discount the persuasiveness of Dr. Ruddock's opinion based either on its lack of supportability or on its lack of consistency with the medical records was supported by substantial evidence.

Remand is warranted on this issue.

---

[4] He hardly could give lack of records as a reason for discounting Dr. Ruddock's opinion. The ALJ requested the consultative evaluation and could have provided Plaintiff's treatment records to Dr. Ruddock if he had wanted to do so.

**B.     Conclusion**

Because remand is warranted for the above reasons, and because remand will require the ALJ to reassess the medical evidence of record and Plaintiff's subjective symptom testimony, the Court declines to address Plaintiff's remaining issue. See *Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground[s] for remand."). In performing the required five-step analysis on remand, the ALJ must abide by all regulations applicable to the consideration of, among other things, the medical evidence, and Plaintiff's subjective symptom testimony.

## IV.     REMAND FOR FURTHER PROCEEDINGS

Remand is appropriate, as the circumstances of this case suggest that further administrative proceedings could remedy the ALJ's errors. *See Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015) ("Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits."); *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101, n.5 (9th Cir. 2014) (remand for further administrative proceedings is the proper remedy "in all but the rarest cases"); *Harman v. Apfel*, 211 F.3d 1172, 1180-81 (9th Cir. 2000) (remand for further proceedings rather than for the immediate payment of benefits is appropriate where there are "sufficient unanswered questions in the record").

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## V.  CONCLUSION

For all the foregoing reasons, **IT IS ORDERED** that:

(1) the decision of the Commissioner is **REVERSED** and this matter
**REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for
further administrative proceedings consistent with this Memorandum
Opinion and Order; and

(2) Judgment be entered in favor of Plaintiff.

DATED: September 15, 2023      _____

BRIANNA FULLER MIRCHEFF
UNITED STATES MAGISTRATE JUDGE

13